REBECCA A. SHARP v. THE TOWNSHIP OF EVERGREEN.

*State road—Failure to keep in repair—Liability of township—Injury to traveler on Sunday.*

1. A *State road*, built upon the division line of two townships, and, by a *verbal* agreement made by the highway commissioners under How. Stat. § 1307, divided and allotted to the several townships to keep in repair, which agreement has been acted upon for more than 20 years, is within the jurisdiction of said townships, *each* of which is liable for any injury received by travelers, without their fault, in consequence of *its* neglect to keep the *portion* allotted to it in good repair.

2. A person has the right to travel on a public highway on Sunday for any *lawful* purpose, and the township charged with the duty of keeping such highway in repair is liable for injuries received under such circumstances, the same as if received on a week-day.

| | |
|---|---|
| 67 | 443 |
| 68 | 449 |
| 67 | 443 |
| 71 | 576 |
| 67 | 443 |
| 77 | 461 |
| 67 | 443 |
| 96 | 315 |
| 67 | 443 |
| 105 | 486 |
| 67 | 443 |
| 109 | 377 |
| 67 | 443 |
| f119 | 216 |
| 119 | 217 |
| 67 | 443 |
| 126 | 850 |
| 67 | 443 |
| f157 | 1638 |
| f157 | 1640 |

Error to Montcalm.   (Smith, J.)   Argued October 13, 1887.   Decided November 3, 1887.

Case.   Defendant brings error.   Affirmed.   The facts are stated in the opinion.

*Lemuel Clute* (*Norris J. Brown*, of counsel), for appellant.

*Ellsworth & Rarden*, for plaintiff.

SHERWOOD, J. The State road running from Ionia to Houghton Lake was built by the State under Act No. 117, Laws of 1859, and runs north and south on the line between the townships of Evergreen and Sidney, in the county of Montcalm. Evergreen lies on the east, and Sidney on the west, side of the road. The plaintiff is the wife of James Sharp, and they reside near the city of Stanton.

Mr. Sharp owned a farm in the town of Bushnell, about eight miles from Stanton, and on Sunday morning, July 8, 1883, Mrs. Sharp rode out to their farm with her husband, and on returning in the afternoon came over the road in question, and at a point about two miles south of Stanton they descended a sand hill in the highway, where the road had been raised to the height of 15 feet, and left about 16 feet wide, unprotected on either side by any railings or other structure to prevent persons or teams from going off the bank at the sides in case of accident. When about half way down the hill, the horse after which the plaintiff and her husband and child were riding shied to the west side of the track, which was planked at this point, and, becoming unmanageable, went off the embankment, carrying with him and the buggy the plaintiff, her husband, and child, seriously injuring Mrs. Sharp, and disabling her from performing any kind of labor, and entailing upon her much pain and suffering.

It is for this injury she brings her suit against the defendant, under Act No. 244, Laws of 1879, and amendments thereto made in Act No. 214, Laws of 1885, counting upon the negligence of the defendant in not providing proper safeguards at said embankment to prevent persons and horses from being precipitated down the precipice.

The defendant pleaded the general issue, and a trial was had in the Montcalm circuit, which resulted in a verdict and judgment for the plaintiff for $1,500.

The defendant brings error.

At the close of the trial counsel for the defendant asked the court to charge the jury as follows:

"1.    There is no evidence in the case which shows the township was under any legal obligation to keep the road in repair at the place where the accident occurred, and your verdict should be for the defendant.

" 2.    The undisputed evidence shows that the road at the place where the injury occurred was a State road not within the jurisdiction and control of defendant, therefore your verdict should be for defendant.

" 3.    The plaintiff avers in her declaration that there was no railing or other protection provided at any time to prevent horses or teams from running off from said plank road on the west side thereof, and that it was the duty of defendant to have built and maintained a railing or guard at the place where the accident occurred; but the road was as the State built it, so far as the railing is concerned, and we have no statute which imposes any duty on townships to complete State roads, and defendant was not in fault for leaving the road in question without a railing at the place named in the declaration, and your verdict should be for the defendant.

" 4. If you find the injury to plaintiff occurred in part because of the road not having a railing, and in part because of the careless driving of a blind horse, plaintiff cannot recover.    And in considering this question of contributory negligence, you should find that greater care should be used in driving a blind horse than one not blind.

" 5. Plaintiff testified that she had been to see her daughter regarding threshing; that she went on Sunday, and was returning on Sunday, the day of the accident.    She was not, then, under the terms of our statute, which forbids any one performing any labor, business, or work on Sunday, entitled to recover for any damages she sustained while engaged in violating our Sunday laws, which are intended to promote morality, and to keep people from engaging in any work other than work of necessity or charity, and your verdict should be for defendant.

" 6. The burden of proof is on the plaintiff to show that the accident did not occur on account of careless driving; and if you find on this point the evidence equally balanced, your verdict should be for defendant."

The court refused to charge as requested in numbers one, two, three, and five, and counsel for defendant excepted to

these several rulings. These requests and the rulings thereon raise all the questions presented in the case. Upon these rulings also depended the questions upon the admissibility of testimony.

From the record it appears that the place where the plaintiff was injured was in the highway, and in the township of Sidney, but it still further appears that, under a verbal agreement made by the commissioners of the two townships, after the road was laid out and built, it was arranged that the township of Evergreen should keep that portion of said road where the accident occurred in repair, and the defendant's commissioner took possession of the same for that purpose more than 20 years since, and from that time to the present the township and its commissioners have kept that portion assigned to it in the division in repair; that in the division made by the commissioners of the two townships each township was assigned alternate miles across the end of the township for care and repairs.

· This division of the highway, although not recorded, has always been acted upon, it would appear, by the townships.

How. Stat. § 1307, requires such division to be made of town-line roads for the purpose of care and repairs.

Section 11 of Act No. 117, Laws of 1859, provides that no moneys of the State shall be used in the construction of State roads, except that derived from the sale of swamp lands.

The following is the section of the statute referred to, requiring division of the road to be made and kept in repair, and the township's liability therefor, upon township lines:

" Whenever a line road shall have been laid out and established pursuant to the last two preceding sections, the officers or authority having jurisdiction in the premises shall forthwith jointly determine as to the time when the same shall be opened and improved, and shall at the same time determine and allot what portion shall be opened, improved, and maintained by either of such townships or municipalities;

and such township or municipality shall have all the rights, and be subject to all the liabilities, in relation to the part of such road so allotted, as if the same was located wholly in such township or municipality, and the damages which may be assessed in any case, together with the costs and expenses of the proceedings, shall be apportioned by the joint action of such authorities to, and paid by, the townships or municipal corporations on the line between which said line road may be located, in proportion to the benefit to be derived therefrom by such townships or municipal corporations."

The other two sections refer to the laying out of highways upon the line between townships by the town authorities.

In 1836 the Legislature of our State placed all State roads under the control, care, and supervision of the commissioner of highways in the several townships. The statute (How. Stat. § 1321) reads as follows:

"All State roads, which are now or may hereafter be laid out in this State, shall be under the care of the commissioner of highways of the several townships through which the same shall pass, and subject to be by them opened and kept in repair in the same manner as township roads, but such State roads shall be altered or discontinued only by the boards of supervisors of the counties in which they may be situated."

How. Stat. § 1445, makes it the duty of townships to keep in good repair, so that they shall be safe and convenient for public travel at all times, all public highways, streets, bridges, cross-walks, and culverts that are within their jurisdiction, and under their care and control; and section 1442 provides that—

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges, cross-walks, and culverts on the same, in good repair, and in a condition reasonably safe and fit for travel, by the township, village, city, or corporation whose corporate authority extends over such public highway, street, bridge, cross-walk, or culvert, and whose duty it is to keep the same in good repair, such township, village, or city, or corpora-

tion shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction.''

Under the facts above stated, and the several statutes cited, the plaintiff claims it was the duty of the township of Evergreen to keep the road where she was injured in repair, and properly protected, so as to prevent such accidents and injury as overtook the plaintiff when she was precipitated down the embankment and injured.

The defendant claims that these several statutes impose no duty to keep the State road in repair by said township, and have no application to a line road laid out and built by the State.

The verdict of the jury has settled the question of negligence of the parties in favor of the plaintiff, but, if the statutes do not apply to State roads, the plaintiff cannot recover. I think, however, that a fair and reasonable construction of these several statutes places the said line road under the jurisdiction of the townships between which it passes, and, under the testimony, that portion of the road where the plaintiff received her injury, under the jurisdiction of the township of Evergreen, and its care and control under its commissioner; and that said township is liable to this plaintiff for any injury she may have received, without her fault, in cons quence of the neglect of said township or its commissioner to keep the same in good repair; and whether it did or not, the determination of the jury upon that subject was final.

There is no other question needing consideration in the case.

The plaintiff had the right to travel on this town-line road on Sunday, as well as upon any other day, for any lawful purpose, and the duty of the township, in case of injury

through its neglect to persons or property, is the same on that day, under such circumstances, as on any other, under the statute.[1]

The judgment must be affirmed.

CHAMPLIN and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.

———————◇———————

| 67 | 449 |
|---|---|
| e121 | 297 |
| 121 | 421 |

---

[1] Plaintiff testified "that she went to her daughter's the day of the accident, on Sunday, to help her daughter, who expected to have threshers on *Monday* or fore-part of the week; that she intended to stay over, but changed her mind, and concluded to go home and return to her daughter's the next morning."