(25 Misc. Rep. 194.)

KELLY v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Term.   November 10, 1898.)

STREET RAILROADS—DEFECTS IN TRACKS—INJURY TO TRAVELER.

    An injury to plaintiff was caused by a loose street-railway rail.   The track had been inspected that morning, and 10 minutes before the accident a car had passed safely over the rail, and the imperfection was not observable; and, shortly after, it was discovered and repaired.   Traffic on the street was heavy at that hour.   There was no showing that the road was improperly laid, or built of poor material, nor that the defect was caused by the company's acts, nor that its method of track inspection was not proper, nor of any previous defect causing the company to apprehend danger from loose rails or spikes.   *Held*, that the company was not shown to be negligent.

    Appeal from municipal court, borough of Manhattan, Third district.

    Action by John Kelly against the Metropolitan Street-Railway Company.   There was a judgment for plaintiff, and defendant appeals. Reversed.

    Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

    John T. Little, for appellant.

    McEwan & McEwan, for respondent.

    GIEGERICH, J.   The plaintiff was injured while driving through Prince street, between Grand and Wooster streets, in the borough of Manhattan, on the morning of March 5, 1898, at about 20 minutes before 10 o'clock.   The injury was caused by plaintiff's wagon coming in contact with a loosened or upturned rail of the defendant's railroad.   It appears that the plaintiff had no previous knowledge of the defective condition of the track, nor was such defect noticed by any of the witnesses until after the happening of the accident. A witness called by the plaintiff (one David Brayer) testified that about 10 minutes prior thereto he saw a car of the defendant company pass over the rail in question.   According to the testimony introduced in plaintiff's behalf, the end of one rail, where two rails had been joined, projected about six inches upward from the other, and one of the spikes had loosened.   It appears, also, that the plaintiff was going along carefully, and at a slow dog-trot, when his wagon struck the easterly rail, causing the whiffletree to break, thereby precipitating him to the ground, and causing his back and lower ribs to be bruised.   The testimony adduced for the defendant tended to show that certain of its employés on the morning in question passed by the place where the accident is said to have occurred, —some for the express purpose of inspecting the track, and others whose general duties required them to observe its condition,—but that no defect was noticed by any of them, excepting one Frank James, who drove one of defendant's cars over the same rail shortly after the accident, and upon whose report the foreman caused repairs to be made forthwith.

    At the close of all the evidence the defendant moved to dismiss the complaint on the ground that no case had been made out against

the defendant, which motion was denied, and an exception taken; and I am inclined to the opinion that the learned justice erred in this ruling. It stood uncontradicted that about 10 minutes only before the accident a car passed safely over the alleged defective rail, that no imperfection was then observable, and that traffic in that street was quite heavy at that time of day. There was not a particle of evidence introduced to show that the defendant's road was either improperly laid, or constructed of poor material; nor has it been shown that the then condition of the rail was caused by one of defendant's cars, or was in any wise the result of defendant's acts, nor yet that the defendant's method of inspecting its tracks was not the proper one. Proof is also absent of any previous defect, or of any circumstances from which, in my opinion, it might be inferred that the defendant had reasonable grounds to apprehend danger because of either loose rails or spikes. These undisputed facts show, to my mind, an absence of negligence, and rebut the presumption of knowledge which is implied from the existence of the defect. Casper v. Railroad Co., 23 App. Div. 451, 48 N. Y. Supp. 352. In the case cited the plaintiff was injured by stepping upon the defendant's track (i. e. a curve at the corner of Lispenard street and Broadway, in the city of New York) about noon of the day in question. One rail of the track was loose, and sank beneath his weight, so that the spikes protruded therefrom some $2\frac{1}{2}$ or 3 inches, thus pinioning the heel of his shoe between the track and the paving stones. The evidence given in behalf of the defendant tended to show that the track had been examined by the track master at 9 o'clock on the morning of the accident, and again between 10 and half past 10 o'clock on the same morning, without its defective condition being discovered, and that when, at 11 o'clock, the absence of spikes was noticed, the track master was immediately apprised of the fact, and repair made before 1 o'clock in the afternoon. Mr. Justice Ingraham, delivering the prevailing opinion of the appellate division, says (page 455, 23 App. Div., and page 355, 48 N. Y. Supp.):

"The liability upon the defendant is thus one of care to keep its rails in such repair that persons using the highway will not be injured. The defendant, however, is not an insurer. It is not absolutely liable to all persons using the highway in which its rails are laid, but it is bound to exercise care in their construction and maintenance, to prevent such a condition of the highway as would cause injury to those rightfully using it. This obligation of the defendant is twofold: First, properly to construct its track; and, second, after so constructed, to maintain it in a safe condition. And liability must be predicated upon a neglect to perform this duty."

Continuing, the learned justice says (pages 456, 457, 23 App. Div., and pages 356, 357, 48 N. Y. Supp.):

"The distinction must always be borne in mind between the duty of a common carrier to its passengers, and the duty of a railroad company occupying a public street to those using the street. We are not dealing now with a common carrier of passengers in relation to its duty to its passengers, and what is said in the cases as to the duty of such a carrier, and the evidence necessary to sustain the charge of negligence in such a case, does not apply. The burden was upon the plaintiff to show that this defendant was negligent in the maintenance of its track, and that such negligence of the defendant

caused the injury. The duty of the defendant as to this track was that it should be diligent in keeping it in repair and in a safe condition. An injury occasioned to the track by a truck passing over it, or in any other way, must be repaired by the railroad company within a reasonable time. It cannot shelter itself behind a plea of not having notice. Its duty of inspection requires that it should inspect the track in such a way that any defect in it could be discovered. But the law does not require of it the performance of an impossibility. It does not require that it should inspect each part of its track every moment. Upon this evidence there could be no presumption that the defendant was negligent in not ascertaining this condition of the track. In regard to making the repair to the track the same rule as to the duty of the railroad company exists. It was bound to take steps at once to repair the track. It was, however, manifestly impossible for this company to have at each corner of the streets through which its road passes a supply of spikes, and men to make such repairs; and there is no evidence to show that such incidents were common, or that there was anything that would justify the company in assuming that such an accident to this track was likely to occur. There is nothing to show that the means adopted by the inspector when he discovered the absence of these spikes, or the action of the track master after the information had been received by him, was not diligent and proper. There was no evidence to show that notice could have been given in any quicker way than that given by the inspector; and, upon the track master receiving the information, a cart, with the necessary workmen and tools to make the proper repairs, was dispatched in ten or fifteen minutes, and reached the place twenty minutes afterwards, when the repairs were made, and the track in fact repaired in less than two hours after its condition was first discovered. It seems to me that there can be no doubt that these facts, which were undisputed, show absence of negligence on the part of the defendant, and rebut any presumption of negligence which the existence of the defect implies."

The case of Worster v. Railroad Co., 50 N. Y. 203, cited by the plaintiff, and the kindred case of Rockwell v. Railroad Co., 64 Barb. 438, affirmed 53 N. Y. 625, are not at variance with the views before expressed. In each of these cases there was proof that the defendant failed to repair defects after reasonable opportunity for ascertainment thereof had elapsed. Thus, in Worster v. Railroad Co., supra, "the facts tended to prove that the defect had existed for some days" (per Church, C. J., page 205), while in Rockwell v. Railroad Co., supra, Ingraham, P. J., writing the opinion, says (page 448): "It is evident from the testimony that the company was in the habit of allowing such defective rails to remain after they knew of their condition. In such a practice, notice would be unnecessary."

I conclude that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.