## Hinkel & Edelen v. Pruitt.

(Decided December 5, 1912.)

### Appeal from Nelson Circuit Court.

Sunday—Contracts Made On—One Who Hires Horse on From Livery-
man Liable for Damages for Negligent Killing.—One who on Sunday
hires a horse from a liveryman for a pleasure drive and negligently
overdrives the horse so as to kill him is liable for the loss of the
horse, although the liveryman knew that he hired the horse for
a pleasure drive on Sunday.

W. H. FULTON, GEO. S. and JNO. A. FULTON for appellants.

NAT W. HALSTEAD, SAM W. ASKEW for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

Hinkel & Edelen own a livery stable in Bardstown.
They brought this suit against T. Pruitt to recover for
the loss of a horse. The material allegations of the pe-
tition are these:

On the —— day of September, 1911, at the special
instance and request of defendant, T. Pruitt, they
hired him a horse and buggy with the understanding
and agreement that he would drive said horse not more
than ten or twelve miles, but they say that said defend-
ant not observing said agreement, but in violation
thereof, drove said horse some thirty-four miles or more
and so carelessly and neglectfully drove said horse as
to cause same to die from said reckless and neglectful
driving, about one-half hour after his return to plain-
tiff's stable from said drive, and plaintiffs say that the
death of said horse was due to the fast and long and
hard drive so recklessly and negligently made and done
by the defendant, and said horse was of the value of
two hundred dollars ($200) and plaintiffs have been
damaged in the sum of $200 by defendant's reckless and
negligent acts in the premises."

The defendant filed an answer in which he denied the allegations of the petition. Afterwards he filed an amended answer as follows:

"Defendant avers that he hired said horse and buggy and said horse sued for herein and mentioned and described in the petition herein on the 3d day of September, 1911, that said 3d day of September, 1911, was a Sabbath day, usually known as Sunday, and that the only contract, understanding or agreement, which he had with the plaintiffs with reference to said horse and buggy was had, made and done on said Sabbath day, the 3d day of September, 1911, and that he hired said horse and buggy from plaintiffs on said Sabbath day and used said horse and buggy on said Sabbath day only, and returned it to the plaintiffs on said Sabbath day. He says that said entire transaction was made, had and done on the Sabbath day and that the contract made and entered into by and between the plaintiffs and this defendant with reference to the hiring of said horse was all made on said Sabbath day, or Sunday. And that at the time said defendant hired said horse and buggy from the plaintiffs that he notified said Edelen from whom he hired said horse and buggy, that he was hiring said horse simply for a pleasure drive, and not as a matter of necessity at all, and the plaintiff, Edelen, well knew that the purpose for which this defendant was hiring said horse and buggy was a matter of a pleasure drive on said Sunday afternoon. And he says that said plaintiffs hired said horse and buggy to this defendant simply for a pleasure drive and same was to be used by defendant for a pleasure drive, and not in a case of, or for any matter of necessity at all, and all of this the plaintiffs well knew at the time they hired the said horse and buggy to this defendant, and know same now."

The plaintiff demurred to the amended answer; the court overruled the demurrer, and the plaintiffs standing upon their demurrer their petition was dismissed. They appeal.

Section 1321, Kentucky Statutes, among other things, provides:

"No work or business shall be done on the Sabbath day, except the ordinary household offices, or other work of necessity or charity, or work required in the maintenance or operation of a ferry, skiff or steamboat, or steam or street railroads."

Under this statute it has been held that contracts made on Sunday are void and that no action can be maintained thereon. (Slade v. Arnold, 14 B. M., 287; Murphy v. Simpson, 14 B. M., 419.) It is insisted for appellee that a pleasure ride not being a work of necessity or mercy and the liveryman knowing at the time the purpose for which the horse was hired, the contract was void, and no action lies. But the case involves a tort committed subsequently to the making of the contract.

The gist of the plaintiffs' cause of action is the defendant's negligent driving of the horse. Their cause of action does not necessarily rest on the contract between them and the defendant, it rests on the tort which the defendant committed in abusing the horse after he got it in possession. The fact that he got the horse in possession on Sunday does not excuse him if while so in possession he by his negligence killed the horse. A man who has the possession of the property of another on Sunday is as much under obligation not to mistreat it as on any other day. If the defendant had gone to the plaintiffs' barn and taken the horse out without any contract with them and so driven it as to kill it, he could not excuse himself on the ground that the wrong was done on Sunday. But he was as much bound to take reasonable care of the horse when he got it on Sunday under a void contract as he would if he had so gotten it on any other day. The defendants' consent for him to use the horse on Sunday simply gave him the rightful possession of the horse; but though he was rightfully in possession when he abused the horse he committed a tort for which he is liable. In Newbury v. Luke, 68 N. J., 189, the court in disposing of a case like this said:

"In the present case the defendant argues that the plaintiff's right of action rests upon a contract of bailment made on Sunday, and as that contract is void the action must fail. The falacy is exposed by reference to the fundamental maxim—*causa proxima, non remota, spectatur*. The Sunday hiring and the Sunday driving happened to furnish the conditions under which the death of the horse was occasioned. But its death was the direct and natural result of the overdriving and abuse, and of these alone. These causes would have produced the same result if they had occurred on any other day of the week, just as they would have produced

it had they occurred without any contract of bailment whatsoever. It follows that the Sunday violation is as clearly nonessential upon the defendant's liability as are such questions as the exact location of the occurrence, the time of day, the color of the horse and the like. But if an inquiry into the contract of bailment were material what is the result? The contract fails. because made on Sunday. That destroys the defendant's right to drive the horse, but it certainly does not confer the right to overdrive it. It vitiates the temporary right of use, but it does not pass the permanent right of property. In short, it leaves the defendant's liability upon the same basis as if the horse had been taken without the leave or license of the plaintiff." To same effect see Nodine v. Doherty, 46 Barb., 59.

In Costello v. Ten Eyck, 24 Am. St. Rep., 128, the defendant had taken the plaintiff's horse to graze and the horse had died from being subjected to a disease by negligence of the defendant; but he insisted that he was not liable for the death of the horse because the contract was made on Sunday. Rejecting this contention, the court said:

"Having taken the horse into his possession, though under a void contract, he yet owed a duty to the plaintiff to exercise some degree of care over it. He was bound to give the plaintiff notice of the disease, so that the plaintiff might have removed the property, or have taken some precaution himself, or to have refused to put the horse in the pasture there."

In Merritt v. Earle, 86 Am. Dec., 292, the plaintiff delivered horses to a carrier on Sunday; the horses were lost. When sued the carrier defended on the ground that the contract was made on Sunday. In answer to this contention, the court said:

"But it is not material whether the contract made was good or bad, it was enough to entitle the plaintiff to recover, that the defendant being a common carrier, had in his custody for transportation the plaintiff's property, and by his negligence or in violation of duty it was lost. This gave the plaintiff a right of action wholly disconnected from the statute relating to the observance of Sunday. (Allen v. Sewall, 2 Wend., 338)"

In Hughes v. Atlanta Steel Co., 36 L. R. A., 547 (N. S.), a servant who was working on Sunday in violation of law, was injured by the incompetence of a fellow servant employed by the master also in violation of the

Sunday statute, and the master relied on the statute in bar of a recovery. It was held that the servant could recover as the violation of the Sunday law was not the efficient cause of the injury; and in a note thereto a number of other cases are collected, the courts holding that it is no defense to a carrier that a passenger was traveling on Sunday in violation of law or that the servant was employed in violation of the Sunday law. See also I. C. R. R. Co. v. Dick, 91 Ky., 434; Commonwealth v. L. & N. R. R. Co., 80 Ky., 291.

We do not see that the case here can be distinguished from those cited. The carrier commits a tort when he suffers a passenger to be injured by his negligence or when he loses that which he undertakes to carry. The master commits a tort when by his negligence his servant is injured. In all these cases although the contract was in violation of the Sunday law, a recovery has been allowed for the tort, and we do not see that a horse delivered to another under a contract of hiring or other bailment can on principle be distinguished. While there are not a few decisions holding otherwise, it seems to us that the rule above indicated is in keeping with the previous rulings of this court and rests upon sound principle.

In Power v. Brooks, 7 Ky. Law Rep., 204, it was said that where a liveryman who hires a team to a customer on Sunday knows that the customer is hiring it only for a pleasure trip, there is a violation of the Sunday law and the contract is void. The principle there laid down would apply if this were a suit on the contract of hiring to recover the price agreed to be paid for the use of the horse. But if we leave out of view entirely the contract and the breach of it, there remains the fact that the defendant committed a tort by overdriving the horse, if he thus negligently brought about its death. The fact that the contract was void did not license him to abuse the horse with impunity, and if he committed a tort by not taking reasonable care of the horse after he got it in his possession, he is liable.

Judgment reversed and cause remanded for further proceedings consistent herewith.